UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, et al.,<br><br>             Plaintiffs,<br><br>    v.<br><br>TECHNICHEM, INC., et al.,<br><br>             Defendants. | Case No.  15-cv-03611-VC<br><br>**ORDER ON SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 123, 135 |

## I. Commercial General Liability Policies

The Court grants Zurich American summary judgment on the fourth claim, concerning the Commercial General Liability Policies.  The plain language of the policies' Total Pollution Exclusion – which bars coverage for claims "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time" – means there's no possibility that those policies apply to claims based on the alleged release of PCE.  *See Lewis v. Hartford Cas. Ins. Co.*, No. 05-cv-2969-MHP, 2006 WL 249516, at *3-5 (N.D. Cal. Jan. 31, 2006); *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1208 n.1, 1216-17 (Cal. 2003); *cf. Titan Corp. v. Aetna Cas. & Sur. Co.*, 27 Cal. Rptr. 2d 476, 482-83 (Ct. App. 1994).

## II. Environmental Impairment Liability Policy

The Court grants the defendants summary judgment on the first claim, concerning the Environmental Impairment Liability Policy's million-dollar liability limit.  Two California regulations (which the EIL Policy incorporates by reference in Endorsement No. 1) provide that

the million-dollar liability limit is "exclusive of legal defense costs."  Cal. Code Regs. tit. 22, §§ 66264.147, 66265.147.  These regulations apply in the event of "sudden accidental occurrences," and it's at least possible that such "sudden accidental occurrences" are exactly what caused the release of PCE from the Technichem site.  In the underlying action, DTSC has not sought to prove how and when the PCE release occurred, and the Court partially denied DTSC's motion for summary judgment because, although there was proof that PCE was released from the site, there was no proof about how or when it was released.  It's certainly possible that the release was gradual or knowing – but it's also possible, at least given the current state of the record, that the release was sudden and accidental.  In fact, DTSC complained that Technichem had been "stacking drums in a manner that may cause the drums to fall, rupture, or leak," Dkt. 135-5 at 5 – in other words, a manner that might cause a sudden and accidental release of PCE.  In this light, it's at least possible that sections 66264.147 and 66265.147 apply here – and "a bare 'potential' or 'possibility' of coverage" is enough to trigger Steadfast's duty to defend.  *Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153, 1160 (Cal. 1993).

In keeping with DTSC's agnostic stance on how the PCE release occurred, Steadfast notes that "[t]here are no allegations in any of the underlying complaints of a 'sudden accidental occurrence.'"  But a duty to defend can be based on extrinsic facts, and not just the allegations in the complaint.  *Montrose*, 861 P.2d at 1157.  And though the California Court of Appeal has stated that "extrinsic facts which may create a duty to defend must be *known by the insurer* at the *inception* of the third party lawsuit," *Gunderson v. Fire Ins. Exch.*, 44 Cal. Rptr. 2d 272, 277 (Ct. App. 1995) (emphasis in original),[1] Steadfast *was* aware of facts giving rise to a duty to defend

---

[1]     It's not entirely clear whether this statement can be reconciled with the rule that an insurer "bears a duty to defend its insured *whenever* it ascertains facts which give rise to the potential of liability under the policy."  *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 177 (Cal. 1966) (emphasis added).  As the California Supreme Court has recently reiterated, "the insurer's duty to defend arises *whenever* the third party complaint and/or the available extrinsic facts suggest, under applicable law, the possibility of covered claims."  *Scottsdale Ins. Co. v. MV Transp.*, 115 P.3d 460, 468 (Cal. 2005) (emphasis added).  These statements suggest extrinsic facts matter whenever they might establish a duty to defend, and not just at the beginning of a lawsuit.  Indeed, the California Supreme Court's statement that "[t]he duty to defend is determined by reference to . . . all facts known to the insurer *from any source*," *Montrose*, 861 P.2d at 1161

under the EIL Policy (in general) at the inception of the underlying lawsuit.  After that point, Steadfast could not end its duty to defend unless it could "establish *conclusively* that there is no potential for coverage."  *Amato v. Mercury Cas. Co.*, 61 Cal. Rptr. 2d 909, 913 (Ct. App. 1997) (emphasis in original).  To bear that burden, Steadfast would have needed to show that the EIL Policy's million-dollar liability limit had been exceeded – which, in turn, would have first required Steadfast to show that defense costs counted towards that limit (by showing that the release was not sudden or accidental).

As a fallback position, Steadfast cites Endorsement No. 1's Condition O, which states that the insured "agree[s] to reimburse [Steadfast] . . . for any payment that we would not have been obligated to make under the provisions of the Policy except for the agreements contained in this Endorsement."  But, to the extent this condition would require the defendants to count defense costs towards their million-dollar liability limit, and reimburse Steadfast for defense costs over that limit, the condition is void as contrary to the public policy embodied in the two regulations (sections 66264.147 and 66265.147) at issue.

Separately, Steadfast argues that the EIL Policy doesn't cover the underlying *DTSC* action at all: Steadfast notes that the EIL Policy only covers "claims" that are made and reported during a period defined by the policy, and the *DTSC* action doesn't qualify.  But Section VI.D.2 of the EIL Policy provides that "[t]wo or more 'claims' arising out of the same, interrelated, associated, repeated or continuous 'pollution event(s)' or a series of related 'pollution events' shall be considered a single 'claim.'"  At a minimum, the *DTSC* action and the *Pellegrini* actions all

---

(emphasis added), suggests that an insured's tender of defense cannot be the only source of extrinsic facts.

Federal courts have a duty to follow the California Court of Appeal only "[w]here there is no convincing evidence that the state supreme court would decide differently."  *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007).  *Gunderson*'s core holding – that "an insurer does not have a continuing duty to investigate whether there is a potential for coverage," *Gunderson*, 44 Cal. Rptr. 2d at 277 – is consistent with the California Supreme Court's case law on the use of extrinsic evidence to trigger an insurer's duty to defend.  But, to the extent that *Gunderson* can be read to suggest that an insurer may evade its duty to defend by remaining willfully blind to extrinsic facts brought to its attention as a lawsuit develops, this is in tension with the law as stated by the California Supreme Court.

arose out of interrelated pollution events, so all three actions constitute a single "claim" for purposes of the EIL Policy. And the first *Pellegrini* action was both filed and reported to Steadfast during the period covered by the EIL Policy. Thus, the relevant "claim" here (which includes both the *DTSC* action and the *Pellegrini* actions) was timely.

The Court also grants the defendants summary judgment on the third claim, concerning the EIL Policy's deductible. As far as Steadfast's duty to defend is concerned, it doesn't matter that Technichem hasn't paid the deductible: "[a] deductible relates only to the damages for which the insured is indemnified, *not to defense costs*. The insurer is fully responsible for defense costs regardless of the amount of the deductible so long as there is a potential for coverage under the policy." *Forecast Homes, Inc. v. Steadfast Ins. Co.*, 105 Cal. Rptr. 3d 200, 206 (Ct. App. 2010) (emphasis in original).

### III. Business Auto Policies

Finally, the Court grants the defendants summary judgment on the fifth claim, concerning the potential for coverage under American Guarantee's and Zurich American's Business Auto Policies.[2] Those policies cover "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and

---

[2]      Though the defendants did not cross-move for summary judgment with respect to the Business Auto Policies, this does not prevent the Court from entering summary judgment in the defendants' favor on this claim. A formal cross-motion on this claim "is unnecessary because the [plaintiffs] moved for summary judgment and none of the facts upon which [the Court's] decision rests are disputed." *Stoll v. Runyon*, 165 F.3d 1238, 1243 n.1 (9th Cir. 1999).

The plaintiffs argue that the Court should stay this action rather than grant summary judgment where the defendants did not cross-move, because the Court's ruling "is based substantially, if not entirely, on what may unfold in the remainder of the underlying actions." But given the current state of the evidence, the plaintiffs have a duty to defend right now. It does not appear that further developments in the underlying action could affect the plaintiffs' duty to defend as it exists right now. At most, the underlying action might resolve disputed facts in the insurers' favor – but where "there [is] *factually* a potential for coverage which impose[s] the duty to defend, and the insurer subsequently develop[s] *facts* showing there [is] no duty in the particular circumstances, . . . the insurer's duty to defend ceases prospectively from the subsequent determination but not retroactively." *Tamrac, Inc. v. California Ins. Guarantee Ass'n*, 74 Cal. Rptr. 2d 338, 342 (Ct. App. 1998); *see also Buss v. Superior Court*, 939 P.2d 766, 773 (Cal. 1997).

resulting from the ownership, maintenance or use of a covered 'auto.'"  "Contamination of the environment" constitutes "property damage," and "reimbursement of response costs and the costs of injunctive relief under CERCLA and related statutes are incurred 'because of' property damage." *AIU Ins. Co. v. Superior Court*, 799 P.2d 1253, 1279 (Cal. 1990).  The policy's definition of "accident," meanwhile, is broad: it "includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'"  In light of these two definitions, the release of PCE at the Technichem site is an "accident" that caused "property damage."

And, based on the allegations in the underlying complaint, there's a non-speculative possibility that the "accident" at the Technichem site resulted from the "use" of a covered auto. Under California law, "use" of an automobile includes loading and unloading.  Cal. Ins. Code § 11580.06(g); *Encompass Ins. Co. v. Coast Nat'l Ins. Co.*, 764 F.3d 981, 984-87 (9th Cir. 2014). The underlying complaint alleges that "Technichem transported hazardous substances to the Technichem facility," where "hazardous substances were released to the environment."  Based on these allegations, it's easy to conceive of a theory under which, for example, PCE was spilled while being unloaded from covered automobiles that transported it to the Technichem site.  And an insurer has a duty to defend unless "the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage.*"  *Montrose*, 861 P.2d at 1160 (emphasis in original).

Extrinsic evidence – while not independently necessary to establish a duty to defend under the Business Auto Policies – confirms that this theory was more than speculation.  *Cf. Gunderson*, 44 Cal. Rptr. 2d at 277-78.  In fact, there's evidence that some or all of the PCE released at the Technichem site really was spilled while being unloaded from vehicles.  Test results "suggest that a release of [PCE] likely occurred near the loading dock," Dkt. No. 135-6 at 9 – a location "where trucks deliver and offload drums and containers of solvents," which could be expected to cause "some spillage of PCE," Dkt. No. 135-9 at 5.

## IV. Next Steps

It appears that the only claims still at issue in this litigation are the second claim (concerning the EIL Policy's Onsite Exclusion) and the sixth claim (concerning the Business Auto Polices' Pending or Prior Litigation Endorsement).  A case management conference is set for June 21, 2016, to discuss what action, if any, is required on these claims.  The case management conference will also address new issues that the parties raised in their post-hearing briefing – for example, the plaintiffs' stated intent to move for arbitration under California Civil Code § 2860, and whether the defendants can seek a new form of declaratory relief (that "all previously submitted invoices must be paid immediately and all invoices moving forward must be paid in a timely manner") in the absence of a counterclaim.  In the meantime, any other pending litigation in this case is stayed.  *See Montrose*, 861 P.2d at 1162.

**IT IS SO ORDERED.**

Dated: June 3, 2016

_____
VINCE CHHABRIA
United States District Judge